## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LARRY ALDOFF,**

       Plaintiff,

vs.                                                  Civ. No. 07-410 WJ/ACT

**VINCENT VIGIL, et al.,**

       Defendants.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Defendants' *Martinez* Report filed September 28, 2007, [Doc 16] which will be construed as a motion for summary judgment.[1] This case was referred to the undersigned United States Magistrate Judge on May 2, 2007, to submit proposed findings of fact and recommendation for the disposition of this case pursuant to 28 U.S.C. §636(b)(1) [Doc. 4]. Having considered the pleadings and the relevant law, the undersigned recommends that Plaintiff's claims against Vincent Vigil be dismissed with prejudice and the remaining claims be dismissed without prejudice.

### PROPOSED FINDINGS

1.    This is a *pro se*, *in forma pauperis* civil rights action brought under 42 U.S.C. §1983 by Plaintiff Larry Aldoff ("Aldoff"). On April 26, 2007, Aldoff filed his Complaint alleging Defendants violated his constitutional rights. Specifically, this lawsuit involves Aldoff's termination from his job at the library and the confiscation of his legal materials. Aldoff alleges he was terminated from

---

[1] On June 18, 2007, the Court dismissed certain claims and only permitted claims against Defendants Vincent Vigil, Lt. Woulard and Lt. Agluilar, in their individual capacities, to go forward. [Doc. 8.]

his job at the library in retaliation for filing Writs of Mandamus and that Defendants in denying him access to a computer and in confiscation his legal materials denied him access to the Courts.

2.	While incarcerated at the Santa Fe County Adult Detention Facility ("SFCADF"), Aldoff was employed at the library with two other prisoners.  One of them was a confidential informant.

3.	In the library there was a computer.  Certain computer disks on the computer contained a "law library."  Prisoners were not entitled to access the computer themselves, but could request copies of cases which the staff would print. It was the custom and practice of the SFCADF that prisoners were not permitted to the use the computer's word processing capability for personal use. Department of Corrections' policy prohibits prisoners from using computers to do legal work. Aldoff's supervisor in the library, Chaplain Robert Ortiz, permitted Aldoff to use the computer for his personal use which included his legal work.

4.	In January of 2007, Larry Leffler ("Leffler"), a jail investigator, was notified by the confidential informant employed in the library that other employees were misusing the computer by using the word processing capability of the computer for their personal needs.  It was alleged that Aldoff and the other prisoner that were employed in the library were generating letters to the Department of Corrections and preparing legal materials for themselves and other prisoners.  The confidential informant reported that this information was stored on a green disk.

5.	On January 8, 2007, Leffler and Defendant Lt. D. Woulard ("Woulard") searched the library for the green disk and confiscated the computer's hard drive and related computer disks. They did not find the green disk.

6.      Also on January 8, 2007, Defendant Lt. Aguilar ("Aguilar") searched Plaintiff's cell for the green disk but did not find it.

7.      The information technology department of the SFCADF found personal documents on the hard drive. As a result of the investigation the library was permanently closed. The library books were then placed on a cart and the cart was moved through the cells. Prisoners were still able to request copies of cases.

8.      On January 10, 2007, Woulard terminated Aldoff as a library employee for the unauthorized use of a computer. Because the library was closed, the three positions were eliminated.

9.      On January 12, 2007, Aldoff filed a Writ of Mandamus against J. Bartholf, an officer with the Bernalillo County Sheriff's Department, CR05-3318. Aldoff alleges he filed two other Writs of Mandamus, one against Deputy Sheriff Lujan and the other against Officers Griego and Carlan, both of the Bernalillo County Sheriff's Department. These Writs do not have a file stamp on them and have the same case number written on them as the one against J. Bartholf. The Writ of Mandamus against J. Barthold was dismissed the day it was filed.

10.     After the search, Leffler returned the disks and other materials, including two folders, to Defendant Vincent Vigil ("Vigil"). Vigil was the Program Manager for the Volunteer Services Program at the SFCADF and as part of his duties supervised the jail library. Later, Aldoff asked Vigil for his legal materials and Vigil returned certain folders to Aldoff.

11.     On February 11, 2007, Aldoff filed the following grievance:

I was taken out of the library on or about the 10th day of January 2007. The legal material I had with me was kept there. I have ask several staff-members to return my legal

material. It has not been returned and I'm in need of it therefore, I'm requesting it be returned at this time. There is two tan folders and one orange folder.[2]

Motion, Exh. E.

12. On February 13, 2007, the grievance, signed by the Grievance Officer, states that "Supervisor Vince Vigil took the orange folder to you & the red folder." *Id.*

13. Aldoff did not file any other grievances while he was incarcerated at SFCADF.

14. The SFCADF grievance procedure has five steps with specific time limits. The procedure states, in part, that:

- A. The Program Manager of Services will have five working days to initiate and conduct any investigation into the grievance subject. Upon completion of the investigation, the Program Manager of Services will forward his grievance recommendation to the Jail Administrator for approval or denial(.) The Jail Administrator will approve or deny the Program Manager of Services recommendation within ten working days of the conclusion of the Program Services (sic) of Services investigation.

- B. The inmate will have five working days to appeal the grievance decision at the Jail Administrator's level. All appeals will be processed through The Program Manager of Services and will forward to the Jail Administrator.

- C. The Jail Administrator will review all appeals within seven working days and provide a written response to the inmate with the final appeal decision.

Motion, Exh.F.

15. On June 4, 2006, Aldoff filed two civil cases in the Second Judicial District, *Larry Aldoff v. Laura Fay Hise*, No. CV-200604990, and *Larry Aldoff v. Leo Rizzo*, No. CCV-200604990.

---

[2] In the Complaint, Plaintiff asserts that four tan folders, one red folders and one orange folder were confiscated. Plaintiff's Complaint at ¶30. In the response to the grievance, it states that Vigil returned one orange folder and one red folder. Motion, Exh. E.

16.     On February 27, 2007, Plaintiff filed a Petition for Habeas Corpus and Motion for Free Process, D101-CV-200700473, in which there is no disposition on the docket attached by Defendants, and a Petition for Habeas Corpus, D-101-CV200700472, in which a verdict was directed for the Plaintiff.

17.     On March 6, 2007, Aldoff was transferred to the New Mexico State Penitentiary.

**Defendant Vigil.**

18.     Personal participation is an essential element in a § 1983 claim. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Aldoff has not demonstrated that Vigil conduct is "affirmatively linked" to the alleged constitutional violations. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993.) It is undisputed that the only involvement of Vigil in this matter is that he returned certain folders to Aldoff. As there is no evidence that Vigil violated any constitutional rights of Aldoff, Aldoff's claims against Vigil should be dismissed with prejudice.

**Exhaustion of remedies.**

19.     Under 42 U.S.C. §1997e(a) of the Prisoner Litigation Reform Act of 1995 ("PLRA"), a prison inmate is required to complete the prison administrative process before suing over prison conditions.[3] *Booth v. Churner*, 532 U.S. 731 (2001). Congress has eliminated both the discretion to dispense with administrative exhaustion and the condition that administrative exhaustion be plain, speedy, and effective. Even where the available remedies would appear to be futile at providing the

---

[3] The Court notes that Plaintiff is not required to specifically plead or demonstrate exhaustion in his Complaint. *Jones v. Bock*, 549 U.S—, 127 S. Ct. 910 (2007). "However, once exhaustion is raised as an affirmative defense the prisoner will be required to present evidence showing that his claims were fully-exhausted. This can be accomplished either by showing compliance with all the necessary grievance procedures, or by showing that efforts at exhaustion were thwarted by prison officials." *Payne v. Friel*, 2007 WL 1100420, *12 (D. Utah, 2007).

kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Id.* at 740. The PLRA's exhaustion requirement applies to all suits arising out of prison life. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

20. The undisputed evidence before this Court is that Defendants had a grievance procedure in place while Aldoff was incarcerated. It is also undisputed that Aldoff filed only one grievance while incarcerated at SFCADF. This grievance involved Aldoff's legal materials. Aldoff has failed to present any evidence demonstrating that he filed any grievance regarding his termination from the library or the alleged retaliation for filing a Writ of Mandamus. To the contrary, the undisputed evidence before the Court is that no grievances were filed regarding these issues. Aldoff's failure to exhaust his administrative remedies on these claims requires the Court to dismiss these claims without prejudice. *Steele*, 355 F.3d 1207 ("[T]he substantive meaning of § 1997e(a) is clear: resort to a prison grievance process must precede resort to a court.")

21. It is also undisputed that Aldoff filed a grievance concerning his confiscated legal materials. It is undisputed that some of his legal materials were returned to him by Vigil. It is further undisputed that Aldoff did not pursue the grievance any further after the return of his legal materials.

22. Prisoners are required to totally exhaust their claims through all the levels of the grievance procedure before they can pursue their claims in federal court. *Kikumura v. Osagie*, 461 F.3d 1269, 1281 (10th Cir. 2006). However, prisoners are not required to appeal a favorable resolution of their grievance. *Ross v. Bernalillo,* 365 F.3d 1181, 1187 (10th Cir. 2004). In *Bernalillo* the court noted:

> [o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not

>required to file additional complaints or appeal favorable decisions in such cases. Where there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete.

*Id.*

23.     If Aldoff received all his legal materials, he received a favorable resolution to his grievance and he has no claim in this Court. If Aldoff did not receive all of his confiscated legal materials, as he alleges in his Response [Doc. 17], he is required to follow all the steps in the grievance procedure prior to filing a complaint in federal court concerning the remaining legal materials. Or Aldoff could have filed a new grievance. He failed to do either. As Aldoff failed to fully exhaust all of his claims before this Court, his Complaint should be dismissed without prejudice. *Kikumura,* 461 F.3d at 1290.

**Law.**

24.     Though not required because of the Court's finding that Aldoff did not exhaust his administrative remedies on any of his claims, the Court notes the following:

*Denial of access to the courts.*

25.     To establish a claim of denial of access to the courts Aldoff must show that Defendants' actions resulted in an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996). Actual injury occurs "not only when a claim is lost or rejected on account of defendant's misconduct, but also when the plaintiff's efforts to pursue a claim are impeded." *Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005). To prevail Aldoff must show that his claim was not frivolous and that the reason for its failure was logically related to the impediment created by the defendants. *Id*. The Tenth Circuit has noted that this standard applies only to the threshold question of standing and that "to prevail on a § 1983 right of access claim and substantiate more than nominal damages, a plaintiff may have to engage the merits of the underlying case." *Id.* at 1244 n.5.

26. Arguably, Aldoff filed four actions during the relevant time. One of Aldoff's Petitions for Habeas relief was granted in his favor. Thus, there is no injury in that matter. Aldoff has not argued or demonstrated that the other Petition for Habeas relief is not frivolous or that the confiscated legal materials concerned any matter in that Petition. As to his two suits filed in 2006, again, Aldoff has not shown that these suits were not frivolous. Moreover, these suits were dismissed on November 9, 2006, for failure to state a claim. These dismissals were entered months before Aldoff's legal materials were confiscated. The Court is aware that orders for lack of prosecution were entered on June 4, 2007, which is after the confiscation of the legal materials; however, Aldoff has not demonstrated that he was unable to prosecute his lawsuits or respond to motions to dismiss because his legal materials had been confiscated. Finally, there is no evidence that Defendants' actions hindered Plaintiff in bringing his claims before this Court. Therefore, Aldoff cannot prevail on this claim because he has not shown any actual injury.

*First Amendment retaliation.*

27. When a plaintiff is not an employee and has no contractual relationship with the defendant, as in this case, the Tenth Circuit courts apply the standard in *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). The *Worrell* standard requires proof of the following elements to support a First Amendment retaliation claim:

> (1) that the plaintiff engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Id.*

28.     Aldoff has not provided any evidence in support of the second and third elements. Aldoff's termination from a position that was shortly thereafter eliminated due to the closing of the library thus would not "chill a person of ordinary firmness from continuing to engage in that activity."  In addition, there is no evidence that Woulard's actions were motived by Plaintiff's filing of the Writ of Mandamus.  The Writ of Mandamus was filed January 12, 2007, two days after Plaintiff was terminated.  Furthermore, it is undisputed that Woulard did not know about the Writ. Moreover, there are no facts nor it is alleged by Aldoff that he was retaliated against for other court filings.  For these reasons, Aldoff cannot prevail on this claim. *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) ("Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

**Tenth Circuit law**.

29.     Finally, the Court notes that Defendants rely heavily in their briefs on the law from other circuits, particularly the Second and Sixth Circuits.  The Tenth Circuit has noted that when this happens, it appears the party does not have Tenth Circuit law to support its position or the party expects the Court to do its work. *Dimond v. J.C. Penney Company, Inc*.116 F.3d 489 (Table) D.N.M.1997).   In this matter, there is more than sufficient Tenth Circuit authority to support Defendants' position. Defendants should have relied on and cited to these decisions.  *United States v. Rodriguez-Mejia*, 20 F.3d 1090, 1092 n. 2 (10th Cir.1994) (noting that litigants should "find and cite" Tenth Circuit authority before citing case law from other circuits because this court is "controlled by the law of this circuit").

**RECOMMENDED DISPOSITION**

I recommend that Plaintiff's claims asserted in his Complaint filed April 26, 2005, against Vincent Vigil be dismissed with prejudice and his remaining claims be dismissed without prejudice.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. Sec. 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas N.W., Albuquerque, NM 87102. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**